## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

IN RE:
STEVEN F. MADEOY

ROBERT D. SCHAECHTER,

     Appellant,

     v.

STEVEN MADEOY,
*Through his Bankruptcy Trustee,*
ROGER SCHLOSSBERG,

     Appellee.

Civil Action No. TDC-15-1821

## MEMORANDUM OPINION

Appellant Robert D. Schaechter appeals a judgment of the United States Bankruptcy Court for the District of Maryland. The bankruptcy court granted summary judgment to Appellee Trustee Roger Schlossberg ("Trustee") on Schaechter's claim in an adversary proceeding seeking reformation of a deed of trust. The Appeal is fully briefed and ripe for disposition. No hearing is necessary to resolve the issues. D. Md. Local R. 105.6. For the reasons set forth below, the judgment of the bankruptcy court is AFFIRMED.

## BACKGROUND

### I.    The Deed of Trust

On December 7, 2006, Schaechter loaned $500,000 to Debtor Steven Madeoy. Schaechter and Madeoy claim that they both intended for Schaechter to receive a lien on Madeoy's 45 percent interest in 3501 13th Street, N.W., LLC (the "LLC") as collateral for the

Case 14-00213   Doc 67   Filed 03/08/16   Page 2 of 12

loan.  Instead, the Money Loaned Deed of Trust ("Deed of Trust") executed by Madeoy and another member of the LLC purported to grant Schaechter a lien on the LLC's real property at 3501 13th Street, N.W., Washington, D.C. (the "Property").  In August 2010, the attorney who drafted the Deed of Trust recorded it with the District of Columbia Recorder of Deeds. Schaechter claims that he did not receive a copy of the Deed of Trust until 2014 and only then discovered that it did not grant him an interest in Madeoy's LLC membership.

## II.     Bankruptcy Proceedings

On December 21, 2012, Madeoy filed a petition for Chapter 7 bankruptcy.  Schlossberg was appointed Trustee.  Schedules filed with that petition listed Schaechter as a creditor with a $900,000 claim, $540,000 of which was unsecured, and an unsecured nonpriority claim of $300,000.  On July 19, 2013, the LLC filed for bankruptcy.  The LLC's schedules listed Schaechter as a creditor with a $900,000 claim, $500,000 of which was secured by the Deed of Trust.

On April 7, 2014, Schaechter initiated an adversary proceeding in Madeoy's bankruptcy case by filing a two-count complaint with the United States Bankruptcy Court for the District of Maryland.  Count One asserted that the Deed of Trust was the product of a mutual mistake by Schaechter and Madeoy and should be reformed to create a lien *nunc pro tunc*, effective as of December 7, 2006, against Madeoy's membership interest in the LLC.[1]  Schaechter also requested the Court to "order[] the parties to effect such filings as may be requisite or advisable to perfect such lien."  Compl. ¶ 22.  Count Two sought a determination of the extent, priority, and amount of Schaechter's lien against Madeoy's LLC membership interest.  On May 9, 2014, the Trustee filed an Answer, Affirmative Defenses, and Counterclaims, asserting, among other

---

[1]    In Latin, *nunc pro tunc* means "now for then."  A *nunc pro tunc* order has retroactive legal effect.  *Nunc pro tunc*, Black's Law Dictionary (10th ed. 2014).

things, that Schaechter's interest in the LLC, if any, was not perfected pre-petition because he had not filed a Uniform Commercial Code ("UCC") financing statement registering that interest. The Trustee argued that 11 U.S.C. § 544(a) empowered the Trustee to avoid the security interest that Schaechter hoped to gain through reformation.

After discovery, the Trustee moved for summary judgment on Schaechter's claims. On June 4, 2015, United States Bankruptcy Judge Thomas J. Catliota held a hearing on the motion at which he made an oral ruling. Judge Catliota adopted the Trustee's Undisputed Statement of Material Facts, with some modifications, as his findings of fact. He then concluded that, if Schaechter's reformation claim succeeded, Schaechter would obtain a pre-petition security interest in Madeoy's LLC membership stake that would be unperfected. Citing *Greenbelt Cooperative, Inc. v. Werres Corp.* (*In re Greenbelt Cooperative, Inc.*), 124 B.R. 465 (Bankr. D. Md. 1991), Judge Catliota noted that intervening judgment lien creditors have priority over unperfected security interests, and because 11 U.S.C. § 544(a), the "strong-arm" provision of the Bankruptcy Code, vests the Trustee with the same rights as a judgment lien creditor, reformation would be futile because the Trustee could simply avoid the unperfected security interest. The following day, Judge Catliota issued a written order holding that the Trustee's strong-arm authority would defeat Schaechter's reformation claim and granting summary judgment on both counts of Schaechter's complaint.

### III.     Procedural History

On June 18, 2015, Schaechter filed a Notice of Appeal. The same day, Schaechter filed a motion seeking leave from the bankruptcy court to file a late proof of claim in Madeoy's bankruptcy case. On July 15, 2015, the bankruptcy court denied that request. On September 17, 2015, Schaechter submitted an opening brief in this Appeal. He argued that the bankruptcy court

erred in concluding that reformation would have resulted in an unperfected security interest, that the Trustee's strong-arm authority under 11 U.S.C. § 544 could be used to avoid such an interest, and that such authority trumped the bankruptcy court's equitable power.  Schaechter further argued that the statute of limitations in 11 U.S.C. § 546 barred the bankruptcy court from relying upon 11 U.S.C. § 544(a).

On October 9, 2015, the Trustee filed his brief, arguing that the bankruptcy court's judgment should be affirmed for the reasons stated by the bankruptcy court, or, alternatively, because the automatic stay provision of 11 U.S.C. § 362 barred Schaechter's claim, because Schaechter failed to file a timely proof of claim in Madeoy's bankruptcy, or because Schaechter had failed to present clear and convincing evidence of a mutual mistake and thus had not proven that the Deed of Trust should be reformed.  On October 21, 2015, Schaechter filed a reply brief.

## DISCUSSION

### I.    Standard of Review

The Court has jurisdiction over the Appeal because the bankruptcy court's order granting summary judgment on Schaechter's claims is a final order.  28 U.S.C. § 158(a)(1) (2012); *see also Gold v. Guberman* (*In re Computer Learning Ctrs., Inc.*), 407 F.3d 656, 660 (4th Cir. 2005) (stating that "orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case") (quoting *In re Saco Local Dev. Corp.*, 711 F.2d 441, 444 (1st Cir. 1983)).  This Appeal challenges the bankruptcy court's legal conclusions, which this Court reviews *de novo*.  *Canal Corp. v. Finnman* (*In re Johnson*), 960 F.2d 396, 399 (4th Cir. 1992).

Case 14-00213   Doc 67   Filed 03/08/16   Page 5 of 12

## II.      Reformation and Strong-Arm Authority

This Appeal relates to the interaction between bankruptcy courts' equitable authority to reform contracts and bankruptcy trustees' statutory strong-arm authority to avoid debtors' pre-petition property transfers.  Some brief background on reformation and the strong-arm authority will set the stage for the dispute between the parties.

### A.      Reformation

"It is a settled principle that a court of equity will reform a written instrument to make it conform to the real intention of the parties, when the evidence is so clear, strong and convincing as to leave no reasonable doubt that a mutual mistake was made in the instrument contrary to their agreement."  *Hoffman v. Chapman*, 34 A.2d 438, 439 (Md. 1943).  Normally, if a court reforms a contract, the modification relates back to the date of the original transaction.  76 C.J.S. *Reformation of Instruments* § 101 (2007); 66 Am. Jur. 2d *Reformation of Instruments* § 9 (2011). However, the court's equitable reformation authority is subject to an important limitation:  it cannot be used to displace the rights of intervening lien holders and bona fide purchasers who acquired their interests without knowledge of the claim staked by the party seeking reformation. *See Hoffman*, 34 A.2d at 440 (stating that a court will not reform a deed for real property "against bona fide purchasers for value without notice"); 2 Md. Law Encyclopedia, *Alteration and Reformation of Instruments* § 27 (2007) ("Reformation generally will not be decreed to the prejudice of innocent third persons."); L.S. Tellier, *Right to Reformation of Contract or Instrument as Affected by Intervening Rights of Third Persons*, 79 A.L.R.2d 1180, 1186 (1961) (collecting cases that have held that reformation "will not be granted if it appears that the rights of bona fide and innocent purchasers or of subsequent encumbrancers for a present consideration[] will be prejudiced thereby").

B.      **Strong-Arm Authority**

11 U.S.C. § 544(a) vests the Trustee with strong-arm authority to avoid certain pre-

petition transfers by a debtor.  Section 544, in relevant part, states:

> The trustee shall have, as of the commencement of the case, and without regard to
> any knowledge of the trustee or of any creditor, the rights and powers of, or may
> avoid any transfer of property of the debtor or any obligation incurred by the
> debtor that is voidable by--
>
> > (1) a creditor that extends credit to the debtor at the time of the
> > commencement of the case, and that obtains, at such time and with respect
> > to such credit, a judicial lien on all property on which a creditor on a
> > simple contract could have obtained such a judicial lien, whether or not
> > such a creditor exists; . . . [or]
> >
> > (3) a bona fide purchaser of real property, other than fixtures, from the
> > debtor, against whom applicable law permits such transfer to be perfected,
> > that obtains the status of a bona fide purchaser and has perfected such
> > transfer at the time of the commencement of the case, whether or not such
> > a purchaser exists.

11 U.S.C. § 544(a).  "Pursuant to this statute, a trustee may exercise the avoidance rights and

powers of a judicial lien creditor who obtains a judicial lien at the commencement of the case,

and the rights and powers of a bona fide purchaser who has perfected its interest at the

commencement of the case."  *Glanz v. RJF Int'l Corp.* (*In re Glanz*), 205 B.R. 750, 753 (Bankr.

D. Md. 1997); *see also Havee v. Belk*, 775 F.2d 1209, 1218 n.15 (4th Cir. 1985) (stating that

under the predecessor to the current strong-arm statute, the trustee is armed "with every right and

power which is conferred by the law of the state upon its most favored creditor who has acquired

a lien by legal or equitable proceedings") (quoting *In re Kravitz*, 278 F.2d 820, 822 (3rd Cir.

1960)).  The scope of the trustee's authority as a hypothetical judicial lien creditor and bona fide

purchaser without knowledge is defined by state law.  *Crestar Bank v. Neal* (*In re Kitchin Equip.*

*Co. of Va., Inc.*), 960 F.2d 1242, 1245 (4th Cir. 1992).  Because Madeoy resides in Maryland, the

relative priority of the Trustee's and Schaechter's competing claims to Madeoy's membership

6

interest in the LLC is governed by Maryland law.  Md. Code Ann., Com. Law §§ 9-301(1), 9-307(b)(1) (2013).

### C.      Unperfected Interest

The bankruptcy court concluded that reforming the Deed of Trust would leave Schaechter with an unperfected security interest in the LLC.  Under Maryland law, an unperfected security interest is subordinate to the rights of a judicial lien creditor.  Md. Code Ann., Com. Law § 9-317(a)(2).  Since § 544 endows the Trustee with the rights of a judicial lien creditor, reformation of the Deed of Trust would be futile if it only provided Schaechter with an unperfected security interest.  *See Greenbelt Coop., Inc. v. Werres Corp.* (*In re Greenbelt Coop., Inc.*), 124 B.R. 465, 471-72 (Bankr. D. Md. 1991) (holding that the trustee could avoid a lien interest in equipment because a creditor's defective financing statement left its interest unperfected); *ZVI Guttman v. Assocs. Commercial Corp.* (*In re Furley's Transp., Inc.*), 272 B.R. 161, 171 (Bankr. D. Md. 2001) (holding that the trustee could avoid an unperfected lien interest in tractor trailers where the creditor failed to file a lien entry form with the Oklahoma Tax Commission).  Schaechter contends that the bankruptcy court, in equity, could have given him a perfected interest in the LLC since he and Madeoy had intended to create such an interest.  Schaechter is incorrect.

By itself, execution of a deed of trust granting a security interest in an LLC membership does not perfect that interest.  The secured party must also file a financing statement with the Maryland State Department of Assessments and Taxation.  Md. Code Ann., Com. Law §§ 310(a), 9-501(a)(2); *see also Wolff v. FWB Bank* (*In re Richman*), 181 B.R. 260, 265 (Bankr. D. Md. 1995) ("In order to perfect a security interest in general intangibles, the secured party must have filed financing statements with the requisite authorities."); *Faison v. Faison* (*In re Faison*), 518 B.R. 849, 858 (Bankr. E.D.N.C. 2014) (finding that security interests in LLCs are

"general intangibles" subject to the UCC's financing statement requirement); *In re Dreiling*, No. 05-64189, 2007 WL 172364, at *2-3 (Bankr. W.D. Mo. Jan. 18, 2007) (same).  Thus, even if the bankruptcy court had reformed the Deed of Trust as Schaechter requested, Schaechter still would have had to file a financing statement to perfect his security interest.  In fact, Schaechter's own complaint recognizes that reformation alone would be insufficient to perfect his desired security interest.  It requested that the bankruptcy court not only reform the Deed of Trust, but also "order[] the parties to effect such filings as may be requisite or advisable to perfect such lien." Compl. ¶ 22.

Schaechter contends that the bankruptcy court underestimated its equitable powers. Noting that the purpose of reformation is to give effect to the intent of contracting parties, which he claims was in this instance to grant Schaechter a perfected interest, Schaechter argues that a reformation *nunc pro tunc* would effectuate a perfected interest as of December 7, 2006. Schaechter further asserts that a financing statement "would have been filed" in Maryland on that same date.  Appellant's Br. at 4.  However, Schaechter fails to explain how reformation could effect the filing of a backdated financing statement when no such financing statement currently exists.  He has identified no authority permitting the bankruptcy court to waive that requirement or to order a yet-to-be filed financing statement to relate back to the date of the original transaction, and none exists.  Furthermore, such an unorthodox reformation would be impermissible because Maryland law does not permit the reformation of contracts when doing so would supplant the interests of intervening judicial lien creditors.  *See Hoffman*, 34 A.2d at 440. Thus, the bankruptcy court correctly ruled that any reformation would result in only an unperfected interest.

### D.      Futility of Reformation

Because Schaechter's unperfected interest would have been subordinate to that of the Trustee exercising the rights of a hypothetical intervening judicial lien creditor, *see* Md. Code Ann., Com. Law § 9-317(a)(2), reformation would have been futile because the Trustee could have avoided any reformation effecting the transfer of Madeoy's membership interest in the LLC to Schaechter, *see* 11 U.S.C. § 544(a)(1).  The court in *Greenbelt Cooperative, Inc.* reached this conclusion on similar facts.  There, a creditor failed to perfect its pre-petition security interest in the debtor's equipment because, even though it filed a financing statement, that financing statement failed to comply with Maryland law.  124 B.R. at 468-71.  The court held that in the absence of a valid financing statement, the trustee could avoid the transfer under 11 U.S.C. § 544(a).  *Id.* at 474; *see also In re Faison*, 518 B.R. at 858 (holding that the trustee could avoid a creditor's interest in an LLC under § 554(a) where the creditor had failed to perfect that interest by filing a UCC financing statement); *In re Dreiling*, 2007 WL 172364, at *3 (same).  "It is clear under Maryland law, that [a trustee acting as a] hypothetical bona fide purchaser would prevail over a party taking under a reformed instrument, where such reformation was subsequent to the bona fide purchaser's acquisition of an interest, unless the bona fide purchaser did not take in good faith or had constructive notice of the prior transaction."  *Barclays American/Mortgage Corp. v. Wilkinson* (*In re Wilkinson*), 186 B.R. 186, 192 (Bankr. D. Md. 1995).

Courts have also recognized that reformation to escape the strong-arm authority of bankruptcy trustees is inappropriate because the trustee is an intervening lien holder who lacks knowledge or notice of the original agreements.  In *Crestar Bank v. Neal* (*In re Kitchin Equipment Co. of Virginia, Inc.*), 960 F.2d 1242 (4th Cir. 1992), the United States Court of Appeals for the Fourth Circuit refused to allow reformation of a creditor's mistaken termination

of a financing statement, in part, because "the mutuality of the mistake, if any, ha[d] been destroyed by the intervening Chapter 7 petition in bankruptcy, which gave the trustee the avoiding powers of a hypothetical lien creditor without knowledge of agreements between the parties." *Id.* at 1249. The United States Court of Appeals for the First Circuit refused to reform a mortgage deed of trust containing an error where the recorded deed did not give the bankruptcy trustee notice of the interest claimed by the mortgagee. *Perrino v. BAC Home Loans Servicing, LP* (*In re Trask*), 462 B.R. 268, 274-76 (1st Cir. BAP 2011). The court noted that "[b]ankruptcy court decisions denying motions to reform deeds or mortgages based on a chapter 7 trustee's status as an intervening lienholder or bona fide purchaser under § 544(a) are legion." *Id.* at 274; *see also Tomsic v. Beaulac* (*In re Beaulac*), 298 B.R. 31, 36 (Bankr. D. Mass. 2003) (refusing to rescind the discharge of a mortgage because the interest asserted by the debtor's co-defendant depended upon an unrecorded assignment of the mortgage note of which the Trustee lacked knowledge, such that the Trustee would have been prejudiced by such rescission).

Based on this precedent, the bankruptcy court correctly refused to reform the Deed of Trust because the Trustee, as a hypothetical judicial lien creditor, did not have notice of Schaechter's asserted security interest in the LLC membership at the time Madeoy filed for bankruptcy. Indeed, the very purpose of the financing statement is "to give notice to third parties of a security interest held by a creditor in the assets of a particular debtor." *Greenbelt Coop., Inc.*, 124 B.R. at 469. Unlike in *Pyne v. Hartman Paving, Inc.* (*In re Hartman Paving, Inc.*), 745 F.2d 307 (4th Cir. 1984), cited by Schaechter, where a debtor-in-possession was not permitted to void a deed because he had actual notice of the conveyance as a party to that transaction, *id.* at 310, the Trustee did not receive notice of Schaechter's claim until Schaechter filed a complaint in Madeoy's bankruptcy proceeding, long after Madeoy filed for bankruptcy. Contrary to

Schaechter's assertions, the debtor's knowledge of the creditor's security interest is not imputed to the trustee.  *Greenbelt Coop., Inc.*, 124 B.R. at 471-472 (holding that the trustee is an "entity distinct from the debtor").  Whether Madeoy knew of Schaechter's interest in the LLC is thus irrelevant.  Consequently, the bankruptcy court did not err when it found that reforming the Deed of Trust would be futile because it would leave Schaechter with an unperfected interest avoidable by the Trustee.

### III.      Statute of Limitations

Schaechter further argues that, even if he would have had only an unperfected interest in the LLC following reformation, the statute of limitations in 11 U.S.C. § 546 would bar the Trustee from asserting his strong-arm authority to usurp Schaechter's interest.  Section 546 provides that an "action or proceeding under section 544 . . . may not be commenced" more than two years after the debtor filed for bankruptcy, provided that the trustee was appointed within the first year of the case.  11 U.S.C. §§ 546(a)(1), 301(b).  Section 546 is "a statute of limitations, subject to waiver, equitable tolling, and equitable estoppel."  *IBT Int'l, Inc. v. Northern* (*In re Int'l Admin. Servs., Inc.*), 408 F.3d 689, 699 (11th Cir. 2005).

Madeoy filed for bankruptcy on December 21, 2012.  The Trustee was appointed soon thereafter.  Under the terms of the statute, the Trustee had until December 21, 2014 to assert his strong-arm authority.  On December 11, 2014, the Trustee and Schaechter entered into an agreement tolling the statute of limitations in § 546 until June 9, 2015.  A tolling agreement is a valid means to extend the § 546 statute of limitations.  *Commercial Fin. Servs., Inc. v. Temple* (*In re Commercial Fin. Servs., Inc.*), 294 B.R. 164, 175 (Bankr. N.D. Okla. 2003).

The Trustee contends that he asserted his strong-arm authority before June 9, 2015.  On May 9, 2014, the Trustee filed an Answer, Affirmative Defenses, and Counterclaims in response

Case 14-00213   Doc 67   Filed 03/08/16   Page 12 of 12

to Schaechter's Complaint.   The Trustee's second counterclaim sought "to avoid Mr. Schaechter's liens pursuant to § 544(a) and (b) because he has not properly perfected them." Answer ¶ 126.  The Trustee specifically requested that the bankruptcy court "determine that the Trustee's powers under § 544 trump Mr. Schaechter's claim in equity for a lien."  *Id.*  Through this counterclaim, the Trustee commenced an action or proceeding under § 544 before the § 546 statute of limitations had run.

In his reply brief, Schaechter seeks to avoid this conclusion by arguing that the Trustee did not assert his strong-arm authority until he filed the Trustee's Motion for Summary Judgment on April 27, 2015.  Even if that were true, however, the Motion for Summary Judgment was also filed before the extended statute of limitations deadline, pursuant to the tolling agreement, of June 9, 2015.  Schaechter's statute of limitations argument is therefore meritless.

Because the Court affirms the bankruptcy court's judgment for the above reasons, it does not consider the alternative grounds for affirmance identified by the Trustee.

### CONCLUSION

For the reasons stated above, the judgment of the bankruptcy court is AFFIRMED.  The Appeal is DISMISSED.  A separate Order shall issue.

Date: March 8, 2016                                          _____/s/_____

                                                        THEODORE D. CHUANG
                                                        United States District Judge